THE PEOPLE OF THE STATE OF NEW YORK ex rel. HAROLD
    J. STEPSKI, Respondent, against HOWARD HARFORD,
    as Sheriff of Orange County, et al., Appellants.

Argued April 9, 1941; decided July 29, 1941.

*Henry Hirschberg, District Attorney,* for appellants. Section 7–14.4 of the Plumbing Code of the City of Newburgh is constitutional and within the power of the Boards of Health and Plumbing to enact. (*People ex rel. Nechamcus* v. *Warden,* 144 N. Y. 529; *Singer* v. *State,* 72 Md. 465; *People* v. *Rogers,* 74 Col. 184; *Douglas* v. *People,* 225 Ill. 536; *Louisville* v. *Coulter,* 177 Ky. 242; *Commonwealth* v. *Beaulieu,* 213 Mass. 138; *Matter of Smith,* 231 Mo. 111; *Beltz* v. *Pittsburgh,* 211 Penn. St. 561; *State* v. *Foss,* 147 Minn. 281; *State ex rel. Winkler* v. *Brenzenberg,* 101 Wis. 172; *Evans* v. *Denver,* 79 Col. 533; *Matter of Chapin* v. *Hogan,* 208 App. Div. 56; *City of Glens Falls* v. *Chapin,* 208 App. Div. 238; *Bronold* v. *Engler,* 194 N. Y. 323; *People ex rel. Lavier* v. *Hessler,* 152 App. Div. 839.)

*William F. Stanton* for respondent. Section 7–14.4 of the Plumbing Code of the City of Newburgh is unconstitutional and not within the power of the Boards of Health

and Plumbing to enact. (*People ex rel. Nechamcus* v. *Warden*, 144 N. Y. 529; *Matter of Chapin* v. *Hogan*, 208 App. Div. 56.)

CONWAY, J. The District Attorney of Orange county appeals as of right under subdivision 1 of section 588 of the Civil Practice Act from an order of the Appellate Division unanimously affirming an order of the Orange County Special Term sustaining a writ of habeas corpus and discharging the relator from the custody of the sheriff.

The learned Special Term justice said: " This writ of habeas corpus originally returned in the County Court has been transferred to the Supreme Court informally and a ruling requested as to the constitutionality of section 7–14.4 of the Plumbing Code of the City of Newburgh, which provides that only licensed plumbers will be permitted to alter, repair or make connections to any part of the plumbing system. No other question has been considered or is decided." (174 Misc. Rep. 1082, 1083.)

The relator was charged with violating a section of the Plumbing Code of Newburgh which had been adopted by the Board of Health and the Board of Plumbers and Plumbing of that municipality under the authority conferred by article 4 of the General City Law (Cons. Laws, ch. 21). The section reads as follows:

" 7–14.4. Repairs. None but licensed master plumbers will be permitted to alter, repair or make connections to any part of the plumbing system. Each master plumber shall submit a monthly report of all work done."

When the case of *People ex rel. Nechamcus* v. *Warden* (144 N. Y. 529) was before this court, we held that the act of the Legislature, which is now substantially embodied in General City Law, sections 40-a, 44, 45, creating boards for the examination of plumbers, empowering the boards to examine those seeking to engage in the trade, business or calling of plumbing as master or employing plumbers and making it unlawful for any person to engage in business as a master plumber without first obtaining a certificate of

competency from such board, was constitutional. We said that that act was a proper exercise of the police power of the State, was not a deprivation of liberty or property without due process of law and was not a denial to the relator there, a master plumber, of the equal protection of the laws of the State. (U. S. Const. Fourteenth Amendment; State Const. art. 1, § 6.)

It was said in *People* v. *Gillson* (109 N. Y. 389, 401, 402), and approved in the *Nechamcus* case: " * * * it is generally for the Legislature to determine what laws and regulations are needed to protect the public health and serve the public comfort and safety, and if its measures are calculated, intended, convenient or appropriate to accomplish such ends, the exercise of its discretion is not the subject of judicial review. But those measures must have some relation to these ends. Courts must be able to see, upon a perusal of the enactment, that there is some fair, just and reasonable connection between it and the ends above mentioned. Unless such relation exist the enactment cannot be upheld as an exercise of the police power."

The constitutionality of the statute was upheld upon the ground that it was merely a restriction upon the right of master plumbers to employ men to work for them in their business thus assuring the public that the master plumber would exercise care in the selection of his employees and be competent to see and correct their faults and omissions. Under that act a master plumber and a journeyman plumber could each carry on his trade but only one with a certificate of competency could be a master plumber and employ others.

With the passage of time the Legislature apparently determined that a wider power of regulation of plumbing as a business was necessary for the protection of public health and safety. In 1929, by chapter 677 of the laws of that year, the Legislature amended the General City Law, section 53, so as to read as follows, the new portion being italicized:

" § 53. Plumbing and drainage to be executed according to rules. The plumbing and drainage of all buildings, both

public and private, in each of the cities of this state, *shall be performed by persons authorized under the rules and regulations adopted by the local board of examining plumbers, in conjunction with the board of health for plumbing and drainage,* and all plumbing and drainage work shall be executed in compliance with such rules and regulations. And all repairs and alterations in the plumbing and drainage of all buildings heretofore constructed shall also be performed and executed in accordance with such rules and regulations; but this section shall not be construed to repeal any existing provision of law requiring plans for the plumbing and drainage of new buildings to be filed with any local board of health and be previously approved in writing by such board of health and be executed in accordance therewith, except that in case of any conflict with such plans, rules and regulations of the board of examiners, the latter shall govern."

Prior to the amendment the following words had been in the statute instead of those italicized *supra:* " shall be executed in accordance with the rules and regulations adopted by the local board of examining plumbers, in conjunction with the board of health for plumbing and drainage."

By the amendment the Legislature specifically provided that the plumbing and drainage of all buildings in each city of the State should not only be executed, as theretofore, in accordance with the rules and regulations adopted by the city board but authorized the local board of examining plumbers, in conjunction with the board of health for plumbing and drainage, to adopt rules and regulations specifying those who should perform the plumbing and drainage work. The Plumbing Code of the city of Newburgh, *i. e.*, the rules and regulations, provide that the work which the relator is charged with doing may be done only by licensed master plumbers. The Code defines plumbing (§ 7–2.4) and the term master plumber (§ 7–2.1). This latter section reads as follows: " The term ' master plumber ' as used in connection with this code shall be taken to mean a person who holds a master plumber's certificate of com-

petency obtained after having successfully passed an examination given by the examining Board of Plumbers of this City, and who engages in the business of plumbing on his own account or as a *bona fide* member of a firm or corporation under the provisions of Section 45-a of the General City Law, and is registered with the Board of Health and has an established place in the City of Newburgh from where he conducts and operates his business, and has his name and metal sign conspicuously displayed at said place of business that is easily read by the public."

The following sections are also material to our inquiry:

" 7–1.1. Qualification, Registration, Examinations and Fees. It shall be unlawful for any person to engage in the business of plumbing or to install, alter or repair any plumbing system in the City of Newburgh, New York, or to display a sign or to give other notice setting forth or intending to imply that he is engaged in the business of plumbing, unless he has obtained a certificate of competency, after examination, and has duly registered said certificate and received a certificate of registry and a metal sign from the health officer as provided in Section 45-b of the General City Law. Every person who desires to engage in the business of plumbing shall make written application under oath upon a form to be prescribed and supplied by the examining Board of Plumbers and pay a fee of Five Dollars ($5.00) for an examination by said Board.

" 7–1.2. Application for examination. Each applicant shall be vouched for by two persons, one of whom, at the time of signing the application as voucher, must be lawfully engaged as a Master Plumber in the City of Newburgh, New York, and who shall appear before the Board and sign under oath on a form prescribed by the Board a certificate certifying to the time the applicant has been employed by the voucher as a journeyman plumber.

" The Board shall refuse to receive an application from any person who, at the time of making application, is unlawfully engaged in business as a master or employing plumber.

" No person shall be examined unless he shall have had an experience of at least five years as a journeyman plumber, and is able to furnish satisfactory evidence of such fact, and no application shall be received from any person who is not a citizen of the United States.

" 7–1.3. Examination. The Examinations of the Board shall be in two parts, viz; (1) Practical tests to determine the applicant's skill as a journeyman plumber; and (2) a written examination. The written examination shall consist of questions designed to determine the applicant's fitness and qualifications to engage in the business of master or employing plumber   *   *   *

" Persons who pass the tests and the written examinations as prescribed by the Board shall be eligible to receive a certificate of competency as master or employing plumber.

" 7–1.4. Pre-requisite to Issuance of Certificate. Before issuing a certificate to engage in the business of master or employing plumber, the Board shall inquire into the applicant's fitness and qualifications for conducting such business, and may require the applicant to submit under oath such evidence, in addition to the examinations and tests hereinbefore provided, as will satisfy the Board that he is a person of good repute, character and responsibility, and otherwise qualified to engage in business as master or employing plumber."

Thus, it is " unlawful for any person to engage in the business of plumbing or to install, alter or repair any plumbing system in the City of Newburgh " unless he shall have first obtained, after examination, a certificate of competency which, in turn, shall be given only to one who shall have had an experience of at least five years as a journeyman plumber, who is a citizen of the United States and a person of good repute, character and responsibility. The question which is presented to us is whether the adoption of section 7–14.4 of the Newburgh Code is within the field of State police power. We think it clearly is. (*People ex rel. Nechamcus* v. *Warden*, 144 N. Y. 529, 537, 538.)

Plumbers are divided into two grades, master or employing plumbers and journeyman plumbers. In addition there are plumbers' helpers. General City Law, section 44, subdivision 2, uses the words " master plumber " and " employing plumber " interchangeably. There is no requirement that the master plumber employ any one. The master plumber may be an individual or a corporation. (General City Law, § 45-a.) As an individual, he may carry on the business alone or may employ journeyman plumbers. A journeyman plumber may continue to work for the master plumber as he has in the past. The point is, however, that no altering, repairing or making of connections to any part of the plumbing system in the city of Newburgh may be made by a journeyman plumber or helper on his own sole responsibility but only by a licensed master plumber or those employed by him.

We do not think that unreasonable in view of the fact that the Legislature may have found that the importance of plumbing and drainage is greater now than formerly by reason of the growing population in our cities and the increasing complexity of our civilization. The relator here was charged with violation of the Code section because he disconnected a coal range from the plumbing system in a building in Newburgh and thereafter installed and connected a pot stove therewith. Not only coal stoves, but gas stoves and some refrigerators and air conditioning units are connected with municipal plumbing systems. These modern conveniences, if the plumbing work in connection with them be done improperly, may well be a potential source of danger to the health and safety of many more persons than the number in the premises involved and such plumbing work is properly subject to regulation under the power delegated in the General City Law. It is not unreasonable for municipal authorities to insist that the responsibility for altering, repairing or making connections to any part of the plumbing system in their cities shall be upon men of good repute, character and responsibility who have a place of business in the affected city, who have passed an exam-

ination as to their competency in their trade and who may be personally found promptly and held to that responsibility, by the municipality or its residents, for acts of commission or omission by themselves or those whom they have employed. We know of no trade, business or calling in the community which more vitally affects the public health and safety of city dwellers than that of plumbing.

General City Law, article 4, does not apply to New York city (General City Law, § 57) but provisions similar to those in the Newburgh Code will be found in the Administrative Code of the City of New York (L. 1937, ch. 929) in sections 816–3.0; C26–210.0; 561–1.0; 2.0.

The orders should be reversed and the relator remanded to custody.

LOUGHRAN, FINCH, RIPPEY, LEWIS and DESMOND, JJ., concur; LEHMAN, Ch. J., taking no part.

Orders reversed, etc.